IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF S. HARNDEN, | 1:02-cv-06529-LJO-GSA-PC |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION, MOTION FOR A NEW TRIAL OR TO AMEND THE JUDGMENT, AND MOTION FOR TRANSCRIPTS |
| D. KEY, R. VOGEL, and J. A. KEENER, | |
| Defendants. | (Doc. 242.) |

### I. BACKGROUND

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. On December 15, 2008, this action proceeded to jury trial. At issue at trial was whether defendants Key, Vogel, and Keener used excessive physical force against plaintiff, and whether defendant Key denied plaintiff adequate medical care, in violation of the Eighth Amendment. On December 18, 2008, after deliberating for approximately one hour, the jury returned a verdict in defendants' favor.

On December 31, 2008, plaintiff filed a motion for reconsideration pursuant to Rule 60(b), a motion for a new trial or to amend the judgment pursuant to Rule 59 and Local Rule 59-291, and a motion for the court to prepare transcripts pursuant to Local Rule 30-250. Having reviewed plaintiff's motions and the file in this action, the court issues this order.

### II. MOTION FOR RECONSIDERATION

Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders of the district court. Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . . of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied . . . or (6) any other reason justifying relief from the operation of

1

the judgment." Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be made within a reasonable time, in any event "not more than one year after the judgment, order, or proceeding was entered or taken." Id.

Motions for reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs. Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001); Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925-26 (9th Cir. 1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought. Walker v. Giurbino, 2008 WL 1767040, *2 (E.D. Cal. 2008); United States v. Rezzonico, 32 F.Supp.2d 1112, 1116 (D. Ariz.1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." U.S. v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001). Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C. Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (en banc). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D. Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987). The court may disregard legal arguments already considered and facts that are introduced for the first time in a motion for reconsideration but were available earlier. Zimmerman, 255 F.3d at 740.

**A.  Mistake**

Plaintiff seeks reconsideration based on mistake by the Court. Plaintiff claims that the Court mistook plaintiff's Motion For Pretrial Order for a pretrial statement during the trial and erroneously stated that plaintiff had filed two pretrial statements. Plaintiff has not presented any facts showing that such mistake could possibly have affected the verdict in this action. Nor has plaintiff given any other reason based on mistake that would justify relief from the operation of the judgment. The Court does not find any reason for reconsideration on this

ground.

**B.     Newly Discovered Evidence**

Plaintiff claims that he has newly discovered evidence demonstrating that defendants falsified the video tape of the November 16, 2001 events, which was played by defendants during the trial. However, plaintiff fails to present any new or different facts or circumstances claimed to exist about the video tape which did not exist before or during trial. Therefore, the court denies reconsideration based on new video tape evidence.

Plaintiff also claims he has new evidence that defendant Keener committed perjury. Plaintiff claims that Keener stated during trial testimony that Keener wrote an Administrative Bulletin <u>after</u> Harnden was assaulted, whereas the Administrative Bulletin is actually dated <u>before</u> the assault. The incident at issue at trial, including Plaintiff's alleged assault, occurred on November 16, 2001. (Amended Pretrial Order at 2:20, Court Document 209.) Plaintiff has submitted to the court a copy of an Administrative Bulletin dated April 12, 1999, which cautions employees of the California Department of Corrections (CDC) not to place handcuffed individuals on their stomachs because this body position can cause "positional asphyxia" or difficulty breathing, resulting in death. (Exhibit C to Motion for New Trial at p. 19). However, plaintiff does not explain why the date of the Administrative Bulletin is newly discovered evidence. Absent an explanation to the contrary, the Administrative Bulletin dated April 12, 1999 was available to plaintiff during discovery before the trial. Moreover, perjury concerning when the Administrative Bulletin was written, if true, may have been used at most by plaintiff to impeach defendant Keener's testimony and show that defendants, as correctional officers employed by the CDC, had knowledge that Harnden, if handcuffed and placed on his stomach, would be in danger of asphyxiation. Such evidence,

///

even if true, when considered along with all other evidence presented at trial, is not evidence of a strongly convincing nature to induce the court to reverse its prior decision.

Plaintiff also argues that he was not given enough time during his closing argument to

3

present the new evidence he had located at that time. However, plaintiff does not describe what new evidence, other than the evidence already discussed, he was unable to present, or what he would have done had he been given more time. Moreover, it is improper in closing argument to make reference to matters not in evidence. Trytko v. Hubbell, Inc., 28 F.3d 715, 727 (7th Cir. 1994); Janich Bros., Inc. v. American Distilling Co., 570 F .2d 848, 860 (9th Cir.1978) (as amended) (citation omitted).

### C. Discovery Issues

Plaintiff claims that the Court denied him discovery before the trial. Plaintiff's discovery issues were considered and resolved prior to trial. During discovery and afterward, plaintiff filed motions to compel discovery and motions for extension of the discovery deadline, which were all resolved by court orders.[1] Nothing in plaintiff's motion causes the court to believe its prior rulings were incorrect or grounds for reconsideration, for a new trial or for amendment of the judgment.

### D. Plaintiff's Eyesight

Plaintiff argues that the court caused him to proceed at trial without appropriate eyeglasses, resulting in his inability to properly see and read documents. Plaintiff's eyesight issues were considered and resolved prior to trial. On October 23, 2008, plaintiff filed a motion for continuance of the pretrial conference until after he received new eyeglasses which had been ordered for him. (Doc. 186.) On October 31, 2008, the court denied the motion due to plaintiff's failure to submit any medical evidence from a physician or optometrist showing cause to continue the pretrial conference until plaintiff received new eyeglasses. (Doc. 190.)

---

[1] The court's order of May 17, 2006 resolved plaintiff's motion to compel filed May 30, 2006 and motion for extension of time filed May 5, 2006. (Docs. 83, 85, 86.) The court's order of September 29, 2006 resolved three of plaintiff's motions to compel filed July 21, 2006, August 9, 2006, and September 15, 2006. (Docs. 89, 90, 92, 93.) The court's order of December 15, 2006 resolved plaintiff's motion to compel filed November 6, 2006. (Docs. 96, 101.) The court's order of February 20, 2007 resolved plaintiff's motions to compel filed January 30, 2007. (Docs. 105, 106, 109.) The court's order of July 16, 2008 resolved plaintiff's motion to compel filed March 21, 2008. (Docs. 145, 150.) The court's order of September 12, 2008 resolved plaintiff's motion to compel and for sanctions filed August 29, 2008. (Docs. 165, 167.) Plaintiff's motion in limine regarding discovery issues, filed November 18, 2008, was resolved on the morning of trial. (Docs. 200, 232.)

On November 18, 2008, plaintiff brought a motion to continue the trial until he received the new eyeglasses, and on December 1, 2008, the court again denied the motion for lack of medical evidence. (Docs. 201, 210.) During the trial, plaintiff again claimed that he could not adequately see or read documents, due to the condition of his eyeglasses. During the trial, and again at the end of the trial, after the jury left the courtroom to begin deliberations, the Court entered the following comment on the record about plaintiff's eyesight:

> THE COURT: . . . Thirdly and lastly, when you indicate that you have one lens in your glasses, are you saying that you do not have a lens?
>
> MR. HARNDEN: I do. I do have a lens.
>
> THE COURT: Yes, you do. You have two lenses.
>
> MR. HARNDEN: Right, let me explain, please.
>
> THE COURT: Wait a minute. Before you do, I'm going to make a comment. That you read the entire closing statement in your argument, and there were not hesitations. You held the documents that you were reading at the ordinary length from your face. It was not close. It was not far away.
>
> MR. HARNDEN: I had one eye closed.
>
> THE COURT: And, in addition, there was no squinting. I observed it very clearly. And, again, I am saying for the record, that your comments about your eyesight are clear to me to be made to the Ninth Circuit for appellate purposes, and I am making a record that that's all they are.
>
> You wanted a continuance of the trial so that, as you said, you could get new glasses. And there was not medical information or optometry or ophthalmology information or even medical, of any nature or at any level, indicating that you could not proceed with the glasses you had.
>
> And that has been borne out from observations by the Court of you during the entire trial. So that is the comment.

Clearly, plaintiff's eyesight issues have already been considered and resolved, and the Court finds no reason in plaintiff's motion to believe its prior rulings were incorrect or grounds for reconsideration, for a new trial, or for amendment of the judgment.

### III. MOTION FOR NEW TRIAL OR TO AMEND THE JUDGMENT

Federal Rule of Civil Procedure 59(a) provides that: "[A] new trial may be granted to

5

all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the court is "bound by those grounds that have been historically recognized." Id. "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). A new trial may be granted only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice. Molski, 481 F.3d at 729; Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n. 15 (9th Cir. 2000).

In considering a motion for a new trial, the court may weigh the evidence and assess the credibility of witnesses, and the court need not view the evidence in the light most favorable to the prevailing party. Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 190 (9th Cir. 1989). However, it is not enough that the trial judge would have reached a different verdict from the jury. U.S. v. 4.0 Acres, 175 F.3d 1133, 1139 (9th Cir. 1999); Roy v. Volkswagen of America, Inc., 896 F.2d, 1174, 1176 (9th Cir. 1990). After weighing the evidence, the trial judge faces a difficult task:

> It may be doubted whether there is any verbal formula that will be of much use to trial courts in passing on motions [for a new trial on the grounds that the verdict is against the clear weight of the evidence]. Necessarily all such formulations are couched in broad and general terms that furnish no unerring litmus for a particular case. On the one hand, the trial judge does not sit to approve miscarriages of justice. His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter. Probably all that the judge can do is to balance these conflicting principles in the light of the facts of the particular case. If, having

> given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (internal cites and quotations omitted). "Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." Landes Const. Co., 833 F.2d at 1372 (citing Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 35 (1944). A court should upset the jury's verdict only where the evidence at trial supports only one reasonable verdict-- that in favor of the moving party. E.g., The Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir. 1988).

Local Rule 59-291 provides that "[M]otions for new trial shall state with specific references to relevant portions of any existing record and to any supporting affidavits: (1) the particular errors of law claimed, (2) if a ground is insufficiency of the evidence, the particulars thereof, and (3) if a ground is newly discovered evidence, the particulars thereof, together with a full complete description of the facts relating to the discovery of such evidence and the movant's diligence in connection therewith.

Pursuant to Rule 59(e), any motion to alter or amend a judgment shall be filed no later than ten days after entry of judgment. Rule 59(e), however, is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir.2000). Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly-discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. Zimmerman, 255 F.3d at 740; School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). This showing is a "high hurdle." Weeks v. Bayer, 246 F.3d 1231,

///

1236 (9th Cir. 2001). A judgment is not properly reopened "absent highly unusual circumstances." Id.

A district court's denial of a motion for a new trial or to amend a judgment pursuant to Federal Rule of Civil Procedure 59 is reviewed for an abuse of discretion. Molski, 481 F.3d at 728; Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001); Defenders of Wildlife v. Bernal, 204 F.3d 920, 928-29 (9th Cir. 2000). A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts. Coughlin v. Tailhook Ass'n, 112 F.3d 1052, 1055 (9th Cir. 1997). "The district court's denial of the motion for a new trial is reversible only if the record contains no evidence in support of the verdict." Molski, 481 F.3d at 729 (quoting Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1347 (9th Cir. 1985)). The Ninth Circuit will reverse the denial of a motion where the district court has "made a mistake of law." Molski, 481 F.3d at 729.

### A. Weight of the Evidence

"On a question of the sufficiency of evidence to support a verdict, 'the evidence adduced by the opposing party shall be taken as true and all reasonable inferences deducible therefrom shall be given their most favorable intendment.'" State of Washington v. U.S., 214 F.2d 33, 40 (9th Cir. 1954), *quoting* Smith v. Shevlin-Hixon Co., 157 F.2d 51, 53-54 (9th Cir. 1946). Evidence is "legally sufficient to support a jury finding on any question of fact, if it is of such substance and character that reasonable men might reach that conclusion," and "[i]n determining whether [] evidence meets this test, all reasonable inferences therefrom, favorable to verdict are to be drawn," and all conflicts are to be resolved in favor of the verdict. Standard Oil Co. of Cal. v. Moore, 251 F.2d 188, 198 (9th Cir. 1958).

At issue at plaintiff's trial was whether defendants Key, Vogel, and Keener used excessive physical force against plaintiff, and whether defendant Key denied plaintiff adequate medical care, in violation of the Eighth Amendment.

///

#### 1. Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in

violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

To prevail on an excessive force claim, an inmate must show the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." Hudson 503 U.S. at 4-5, 7. Such factors as the need for the application of the force, the relationship between the need for the application of force and the amount of force used, and the extent of injury inflicted are relevant to the ultimate determination. Whitley v. Albers, 475 U.S. 312, 319 (1986). An inmate, however, does not need to have suffered an injury to establish an Eighth Amendment violation. Hudson, 503 U.S. at 7.

Plaintiff's claims of excessive force stem from an incident on November 16, 2001 at Corcoran State Prison, in which plaintiff misbehaved in his cell by refusing to remove his hand from the food port and refusing to relinquish his food tray, after which defendants ordered him to submit to an unclothed body search and exit the cell. Defendants then sprayed him with pepper spray, removed him from his cell, took him outside, rinsed him off with water, and returned him to a cell.

At trial, plaintiff argued that the force used against him was unnecessary because by the time defendants used the pepper spray, plaintiff had complied with defendants' orders to remove his hand from the food port and relinquish his food tray, thus ending plaintiff's misbehavior. Plaintiff testified that he complied to the best of his ability with defendants'

9

orders to submit to a body search. Plaintiff testified that he was pushed against a wall and assaulted by defendants as he was escorted outside. Plaintiff testified that he was not thoroughly washed by defendants because they did not remove his shorts to wash his genitals. Plaintiff also testified that the pepper spray caused him pain and a recurrence of his childhood asthma. Plaintiff's witness Dale Dustin, his cellmate during the incident, testified that plaintiff's misbehavior with the food port and food tray had ended before defendants used pepper spray on plaintiff.

Defendants argued that any force they used against plaintiff was applied in a good-faith effort to maintain or restore discipline, because when an inmate refuses to remove his hand from the food port, it causes serious security concerns and interferes with the regular activities at the prison. Defendants presented evidence that application of pepper spray on inmates is a safe and well-tested way to subdue them when necessary for extraction from the cell. Defendants also presented evidence that plaintiff often misbehaved to gain attention and had been subjected to unclothed body searches and cell extractions many times before. Defendants showed video tape evidence of the events at issue, where defendants were shown explaining their roles in the cell extraction, why the pepper spray was necessary, and what measures had been taken to avoid using force and to prevent injuries to plaintiff and to defendants during the extraction. The video tape evidence showed plaintiff being extracted from his cell, escorted outside, and rinsed with water from a hose for several minutes to remove the pepper spray. Defendants testified that they did not push plaintiff against a wall or assault him while escorting him out of the building to be rinsed off. Defendants' expert witness, a doctor, testified about the usual effects of pepper spray on a person's health.

The Court finds no reason to doubt that the jury properly rendered its verdict on plaintiff's excessive force claim against the clear weight of the evidence presented at trial.

///

Plaintiff offers no new law, new evidence, or other reason why he is entitled to relief under Rule 59 on this claim.

### 2. **Denial of Medical Care**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin, 974 F.2d at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Id. (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff claimed that defendant Key denied him medical treatment after the incident on November 16, 2001. Plaintiff testified that he was in pain from the pepper spray and told defendant Key that he could not breathe and needed medical care, but Key ignored him.

Defendant Key testified that plaintiff did not ask him for medical care and Key was not aware that plaintiff needed medical care during or after the incident at issue.

///

The Court finds no reason to doubt that the jury properly rendered its verdict on plaintiff's medical care claim against the clear weight of the evidence presented at trial.

Plaintiff offers no new law, new evidence, or other reason why he is entitled to relief under Rule 59 on this claim.

**B.      Bias**

Plaintiff argues that a new trial or amendment of the judgment should be granted because the judge was biased. In his motion, plaintiff claims the judge exhibited bias when, as Magistrate Judge (prior to its elevation to District Judge), he denied plaintiff's motions in this action before trial. Plaintiff has not specifically referred to relevant portions of the court's record or presented facts in support of his argument that the judge's decision in any particular order was biased.

Plaintiff also argues that the judge exhibited bias during trial by finding that plaintiff had not laid a foundation to offer certain pieces of evidence; by preventing plaintiff from reading the law and court orders aloud; and by preventing plaintiff from reading his entire eighteen-page Closing Statement aloud. However, plaintiff fails to support this argument with any facts demonstrating conduct by the judge which could be construed as biased against plaintiff.

Moreover, at the end of trial, after the jury had rendered its verdict in the case and was excused by the court, plaintiff made a statement on the record expressing his opinion that the judge had treated him fairly:

> THE COURT: Let the record reflect that the jury has left the courtroom. There is a motion pending and it is now moot. Do you agree that it is moot?
>
> MS. O'CARROLL: Yes, your Honor.
>
> THE COURT: All right. Is there anything further?
>
> MS. O'CARROLL: No, your honor.
>
> THE COURT: Anything further, Mr. Harnden?

///

///

> MR. HARNDEN: Sir, first of all, I think that you were – you know, I alleged that

12

|   |   |
|---|---|
|   | you were biased at some point in time, and I think that you have been more than fair. I mean you gave me a lot more respect than I thought that I was ever going to get from you. |
|   | And first of all, I apologize for, you know, some of my roughness with you, if it is. But I wanted you to know when I requested to read from this book, it's got teeny tiny print, just teeny tiny. And I asked you if I could submit to you on paper the things that I was – wanted to quote, you know, as relates to the legal references. That was why I wanted to give it to you in handwritten form. |
| THE COURT: | The Court will allow you to supplement the record by making copies of whatever pages you wanted to read from, from whatever book that is, but you must do it within the next five days. |
|   | All right. You need to understand, Mr. Harnden, that it is not the function of the Court to take sides in a case. |
| MR. HARNDEN: | I understand that. |
| THE COURT: | We don't do that in a jury trial. That is up to the jury, but it is the function of the Court to make sure that people follow the rules, and that's on both sides of the case. |

The Court finds that plaintiff has not offered any evidence that the judge was biased against him or that the district court made any decision that was manifestly unjust.

### C. Jury Misconduct

Plaintiff also bases his motion on alleged jury misconduct. Plaintiff argues that the jury could not have properly deliberated if they reached a verdict in this case in less than an hour.

The Court finds no Supreme Court or Ninth Circuit authority addressing whether short deliberation by a jury is of itself ground for a new trial. However, other courts have held that the fact that the jury remained out only a short time before bringing in their verdict is not of itself ground for a new trial in the absence of coercion or of circumstances evincing passion or prejudice. Wingfield v. Paige, 278 Ark. 276, 633 S.W.2d 940 (1983); Lindsey v. Johnson, 415 So. 2d 778 (Fla. Dist. Ct. App. 1st Dist. 1982), *petition for review denied*, 426 So. 2d 26 (Fla. 1983); Sammons v. Smith, 353 N.W.2d 380 (Iowa 1984). Drury v. American Honda Motor Co., Inc., 659 So. 738 (La. Ct. App. 1st Cir. 1994), *reh'g denied* (Jan 26, 1995) *and writ denied,* 660 So. 2d 437 (La. 1995); Folsom v. Great Atlantic & Pacific Tea Co., 521 A.2d 678

(Me. 1987); Parker v. Evening Post Pub. Co., 317 S.C. 236, 452 S.E.2d 640 (Ct. App. 1994), *reh'g denied*, (Jan. 26, 2995) *and cert. denied*, 516 U.S. 1172, 116 S. Ct. 1263, 134 L. Ed. 2d 211 (1996); Ayers By and Though Ayers v. Johnson & Johnson Baby Products Co., a Subsidiary of Johnson & Johnson Co., 117 Wash. 2d 747, 769 (1991); Cofer v. Cofer, 1 Tenn. App. 538 (1925); Fisher v. Leach, 221 S.W.2d 384 (Tex Civ. App. San Antonio 1949), *writ refused n.r.e.*; Carrera v. Noonan, 69 R.I. 111, 31 A.2d 424 (1943). Plaintiff has not submitted any evidence that any juror was coerced, impassioned, or prejudiced during deliberations. Therefore, the Court finds that the length of the jury's deliberation in this action is not a ground for a new trial.

Plaintiff also argues that the jury could not have considered and discussed all of the evidence during deliberations, as required by Jury Instruction No.36. Jury Instruction No. 36, which the Court read to the jurors before their deliberation, provides:

**INSTRUCTION NO. 36**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

The court presumes the jury followed the Jury Instructions which were given by the Court. Plaintiff has not presented any evidence to the contrary in his motion.

///

### D. Video Evidence Was Obscured

Plaintiff claims that some of the video evidence was obscured by defendants. However, plaintiff fails to support this argument with any facts showing that video evidence was obscured or that defendants acted to obscure evidence. If plaintiff has newly discovered evidence, he has failed to comply with Local Rule 59-291's requirement to make specific references to "the particulars [of the newly discovered evidence], together with a full complete description of the facts relating to the discovery of such evidence and [plaintiff's] diligence in connection therewith." Therefore, the Court finds that the condition of the video evidence is not a ground for a new trial.

## III. MOTION FOR TRANSCRIPTS

Plaintiff also brings a motion for the court to prepare transcripts pursuant to Local Rule 30-250. Local Rule 30-250 governs the filing, custody and maintenance of depositions. Plaintiff has not specified which transcripts he needs. Upon the filing of an appeal, the Clerk will send plaintiff a Transcript Designation Form where plaintiff can designate any transcripts he wishes to be prepared. Plaintiff is informed that in forma pauperis status does not apply to the cost of transcripts. Accordingly, plaintiff's motion for transcripts shall be denied without prejudice.

## IV. CONCLUSION

Based on the foregoing, plaintiff's motion for reconsideration, motion for a new trial or to amend the judgment, and motion for transcripts are denied. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for reconsideration is DENIED;
2. Plaintiff's motion for a new trial or to amend the judgment is DENIED; and
3. Plaintiff's motion for transcripts is denied without prejudice.

IT IS SO ORDERED.

**Dated:    January 8, 2009**          /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE